## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

DANIEL AZPURUA, Individually and on behalf of all others similarly situated,

    Plaintiff,

    v.

SOLARWINDS CORPORATION, KEVIN B. THOMPSON, and J. BARTON KALSU,

    Defendants.

Case No: 1:21-CV-00047

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Daniel Azpurua ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SolarWinds Corporation ("SolarWinds" or the "Company"), and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded SolarWinds securities from February 24, 2020 through December 15, 2020, inclusive (the "Class Period").  Plaintiff seeks to recover compensable damages caused by

Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company's principal executive offices are located in this judicial district and alleged the misstatements and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased SolarWinds securities during the Class Period and was economically damaged thereby.

7.      Defendant SolarWinds purports to provide information technology (IT) infrastructure management software products in the United States and internationally.  The Company offers products to monitor and manage network, system, desktop, application, storage, and database and website infrastructures, whether on-premise, in the public or private cloud, or

**CLASS ACTION COMPLAINT** - 2

in a hybrid IT infrastructure.  SolarWinds is a Delaware corporation and its principal executive offices are located at 7171 Southwest Parkway, Building 400, Austin, Texas 78735. SolarWinds's securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "SWI."

8.      Defendant Kevin B. Thompson ("Thompson") has been the Company's Chief Executive Officer ("CEO"), President, and Director throughout the Class Period.

9.      Defendant J. Barton Kalsu ("Kalsu") has been the Company's Chief Financial Officer ("CFO"), Executive Vice President, and Treasurer throughout the Class Period.

10.     Defendants Thompson and Kalsu are collectively referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

    a.      directly participated in the management of the Company;

    b.      was directly involved in the day-to-day operations of the Company at the highest levels;

    c.      was privy to confidential proprietary information concerning the Company and its business and operations;

    d.      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e.      was directly or indirectly involved in the oversight or implementation of the Company's internal controls; was aware of or recklessly disregarded the fact that the false and is leading statements were being issued concerning the Company; and/or

f.      approved or ratified these statements in violation of the federal securities

laws.

12.     SolarWinds is liable for the acts of the Individual Defendants and its employees

under the doctrine of *respondeat superior* and common law principles of agency because all of the

wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the

Company is similarly imputed to SolarWinds under *respondeat superior* and agency principles.

14.     Defendant SolarWinds and the Individual Defendants are collectively referred to

herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading Statements Issued During the Class Period

15.     On February 24, 2020, the Company filed a Form 10-K for the fiscal year ended

December 31, 2019 (the "2019 10-K"). The 2019 10-K was signed by Defendants Thompson and

Kalsu. The 2019 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002

("SOX") by Defendants Thompson and Kalsu attesting to the accuracy of financial reporting, the

disclosure of any material changes to the Company's internal control over financial reporting and

the disclosure of all fraud.

16.     The 2019 10-K stated the following risk regarding the Company's cybersecurity

measures:

> The risk of a security breach or disruption, particularly through
> cyberattacks or cyber intrusion, including by computer hacks, foreign
> governments, and cyber terrorists, has generally increased the number,
> intensity and sophistication of attempted attacks, and intrusions from
> around the world have increased. In addition, sophisticated hardware and
> operating system software and applications that we procure from third
> parties may contain defects in design or manufacture, including "bugs" and
> other problems that could unexpectedly interfere with the operation of our
> systems.

Because the techniques used to obtain unauthorized access or to sabotage systems change frequently and generally are not identified until they are launched against a target, we may be unable to anticipate these techniques or to implement adequate preventative measures. We may also experience security breaches that may remain undetected for an extended period and, therefore, have a greater impact on the products we offer, the proprietary data contained therein, and ultimately on our business.

The foregoing security problems could result in, among other consequences, damage to our own systems or our customers' IT infrastructure or the loss or theft of our or our customers' proprietary or other sensitive information. The costs to us to eliminate or address the foregoing security problems and security vulnerabilities before or after a cyber incident could be significant. Our remediation efforts may not be successful and could result in interruptions, delays or cessation of service and loss of existing or potential customers that may impede sales of our products or other critical functions. We could lose existing or potential customers in connection with any actual or perceived security vulnerabilities in our websites or our products.

*      *      *

Despite our security measures, unauthorized access to, or security breaches of, our software or systems could result in the loss, compromise or corruption of data, loss of business, severe reputational damage adversely affecting customer or investor confidence, regulatory investigations and orders, litigation, indemnity obligations, damages for contract breach, penalties for violation of applicable laws or regulations, significant costs for remediation and other liabilities. We have incurred and expect to incur significant expenses to prevent security breaches, including deploying additional personnel and protection technologies, training employees, and engaging third-party experts and consultants. Our errors and omissions insurance coverage covering certain security and privacy damages and claim expenses may not be sufficient to compensate for all liabilities we incur.

17.     On May 8, 2020, the Company filed a Form 10-Q for the quarter ended March 31, 2020 (the "1Q20 10-Q"). The 1Q20 10-Q was signed by Defendant Kalsu. The 1Q20 10-Q contained signed SOX certifications by Defendants Thompson and Kalsu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 1Q20 10-Q incorporated by reference the Company's description of the cybersecurity risk in ¶ 16.

**CLASS ACTION COMPLAINT** - 5

18.     On August 10, 2020, the Company filed a Form 10-Q for the quarter ended June 30, 2020 (the "2Q20 10-Q").  The 2Q20 10-Q was signed by Defendant Kalsu.  The 2Q20 10-Q contained signed SOX certifications by Defendants Thompson and Kalsu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.  The 2Q20 10-Q incorporated by reference the Company's description of the cybersecurity risk in ¶ 16.

19.     On November 5, 2020, the Company filed a Form 10-Q for the quarter ended September 30, 2020 (the "3Q20 10-Q").  The 3Q20 10-Q was signed by Defendant Kalsu.  The 3Q20 10-Q contained signed SOX certifications by Defendants Thompson and Kalsu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.  The 3Q20 10-Q incorporated by reference the Company's description of the cybersecurity risk in ¶ 16.

20.     The statements referenced in ¶¶ 16-19 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) since mid-2020, SolarWinds Orion monitoring products had a vulnerability that allowed hackers to compromise the server upon which the products ran; (2) SolarWinds' update server had an easily accessible password of 'solarwinds123'; (3) consequently, SolarWinds' customers, including, among others, the Federal Government, Microsoft, Cisco, and Nvidia, would be vulnerable to hacks; (4) as a result, the Company would suffer significant reputational harm; and (5) as a result, Defendants' statements about

**CLASS ACTION COMPLAINT** - 6

SolarWinds's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins to Emerge

21.     On December 13, 2020, *Reuters* reported that hackers alleged to be working for the Russian government had monitored email traffic at the U.S. Treasury and Commerce departments and that the alleged hackers are believed to have gained access to the agencies' email traffic by deceptively interfering with updates released by SolarWinds, which services various government vendors in the executive branch, the military, and the intelligence services.

22.     On December 14, 2020, SolarWinds filed a Form 8-K with the SEC, disclosing that it had been the subject of hack on its Orion monitoring products.  The Company stated, in pertinent part:

> SolarWinds Corporation ("SolarWinds" or the "Company") has been made aware of a cyberattack that inserted a vulnerability within its Orion monitoring products which, if present and activated, could potentially allow an attacker to compromise the server on which the Orion products run. SolarWinds has been advised that this incident was likely the result of a highly sophisticated, targeted and manual supply chain attack by an outside nation state, but SolarWinds has not independently verified the identity of the attacker. SolarWinds has retained third-party cybersecurity experts to assist in an investigation of these matters, including whether a vulnerability in the Orion monitoring products was exploited as a point of any infiltration of any customer systems, and in the development of appropriate mitigation and remediation plans. SolarWinds is cooperating with the Federal Bureau of Investigation, the U.S. intelligence community, and other government agencies in investigations related to this incident.

> Based on its investigation to date, SolarWinds has evidence that the vulnerability was inserted within the Orion products and existed in updates released between March and June 2020 (the "Relevant Period"), was introduced as a result of a compromise of the Orion software build system and was not present in the source code repository of the Orion products. SolarWinds has taken steps to remediate the compromise of the Orion software build system and is investigating what additional steps, if any, should be taken. SolarWinds is not currently aware that this vulnerability exists in any of its other products.

23.     On this news, the Company's shares fell $3.93 per share, or 17%, to close at $19.62 per share on December 14, 2020, damaging investors.

24.     On December 15, 2020, *Reuters* published an article stating that, last year, security researcher Vinoth Kumar "alerted the company that anyone could access SolarWinds' update server by using the password 'solarwinds123.'"  The article also disclosed that, according to Kyle Hanslovan, the cofounder of Maryland-based cybersecurity company Huntress, "days after SolarWinds realized their software had been compromised, the malicious updates were still available for download."

25.     On this news, the Company's shares fell $1.56 per share or 8% to close at $18.06 per share on December 15, 2020, damaging investors.

26.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired SolarWinds securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of SolarWinds, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SolarWinds securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be

ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

> a.   whether the Exchange Act was violated by Defendants' acts as alleged herein;
>
> b.   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SolarWinds;
>
> c.   whether the Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
>
> d.   whether Defendants caused SolarWinds to issue false and misleading SEC filings during the Class Period;

e.   whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

f.   whether the prices of SolarWinds securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

g.   whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

33.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.   SolarWinds shares met the requirements for listing, and were listed and actively traded NYSE, a highly efficient and automated market;

b.   As a public issuer, SolarWinds filed periodic public reports with the SEC;

c.   SolarWinds regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.   SolarWinds was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

34.   Based upon the foregoing, the market for SolarWinds securities promptly digested current information regarding SolarWinds from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

36.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.   This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.   During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    a.   employed devices, schemes and artifices to defraud;

    b.   made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.   engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of SolarWinds securities during the Class Period.

40.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of SolarWinds were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of SolarWinds, their control over, and/or receipt and/or modification of SolarWinds's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning SolarWinds, participated in the fraudulent scheme alleged herein.

41.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other SolarWinds personnel to members of the investing public, including Plaintiff and the Class.

42.     As a result of the foregoing, the market price of SolarWinds securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of SolarWinds securities during the Class Period in purchasing SolarWinds securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

43.     Had Plaintiff and the other members of the Class been aware that the market price of SolarWinds securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased SolarWinds securities at the artificially inflated prices that they did, or at all.

44.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of SolarWinds securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     During the Class Period, the Individual Defendants participated in the operation and management of SolarWinds, and conducted and participated, directly and indirectly, in the

conduct of SolarWinds's business affairs.  Because of their senior positions, they knew the adverse

non-public information about SolarWinds's corporate governance and business prospects.

48.     As officers and/or directors of a publicly owned company, the Individual

Defendants had a duty to disseminate accurate and truthful information with respect to

SolarWinds's business practices, and to correct promptly any public statements issued by

SolarWinds which had become materially false or misleading.

49.     Because of their positions of control and authority as senior officers, the Individual

Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which SolarWinds disseminated in the marketplace during the Class Period

concerning the Company's corporate governance and business prospects.  Throughout the Class

Period, the Individual Defendants exercised their power and authority to cause SolarWinds to

engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were

"controlling persons" of SolarWinds within the meaning of Section 20(a) of the Exchange Act.  In

this capacity, they participated in the unlawful conduct alleged which artificially inflated the

market price of SolarWinds securities.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to

Section 20(a) of the Exchange Act for the violations committed by SolarWinds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief

as follows:

A.     Declaring this action to be a proper class action, designating plaintiff as Lead

Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the

Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead

Counsel;

B.      Awarding damages in favor of plaintiff and the other Class members against all

defendants, jointly and severally, together with interest thereon;

C.      Awarding Plaintiff and the Class reasonable costs and expenses incurred in this

action, including counsel fees and expert fees; and

D.      Awarding Plaintiff and other members of the Class such other and further relief as

the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:   January 14, 2021

Respectfully submitted,

*/s/Willie Briscoe*
Willie Briscoe
Texas Bar No. 24001788
 The Briscoe Law Firm, PLLC
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Tel: 972-521-6868
Fax: 346-214-7463
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*